**THE ALTMAN LAW GROUP**
Bryan C. Altman (SBN 122976)
Andrew Jung (SBN 336002)
10990 Wilshire Blvd., Suite 220
Los Angeles, CA 90024
Telephone: (310) 277-8481
Facsimile: (310) 277-8483

**QUILL & ARROW, LLP**
Kevin Y. Jacobson, Esq. (SBN 320532)
Gregory Sogoyan, Esq. (SBN 316832)
10900 Wilshire Boulevard, Suite 300
Los Angeles, CA, 90024
Telephone:   (310) 933-4271
Facsimile:    (310) 889-0645

Attorney for Plaintiff,
**ALAN MANOUKIAN**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN MANOUKIAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC, A Delaware Limited Liability Company,<br><br>Defendants. | Case No.: 2:21-cv-08813-SVW (KSx)<br><br>*Assigned to the Hon. Karen L. Stevenson*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**<br><br>**Hearing:** Motion for Attorney's Fees<br><br>Date: December 6, 2023<br>Time: 10:00 a.m.<br>Courtroom.: 580 |

**TO THE HONORABLE COURT, DEFENDANT, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 6, 2023, at 10:00 a.m., in Courtroom 580 of the above-captioned court, located at 255 E Temple Street, Los Angeles, California 90012, Plaintiff Alan Manoukian ("Plaintiff") will, and hereby does, move the Court pursuant to a jury verdict and the Song-Beverly Consumer Warranty Act, Civil Code section 1794(d) for an Order awarding him attorneys' fees, costs, and expenses in the total amount of amount of $528,092.04.

This Motion is made on the grounds that Plaintiff is the prevailing party under the Song-Beverly Warranty Act, which entitled Plaintiff's counsel to attorneys' fees, costs, and expenses.

This Motion is based on this Notice; the Memorandum of Points and Authorities; the Declaration of Kevin Jacobson; the Declaration of Bryan C. Altman; the Declaration of Andrew Jung; the pleadings and papers on file herein; and on any other matter that may be presented to the Court at or before the hearing on this matter.

Dated:   October 27, 2023

> Respectfully submitted,
> **THE ALTMAN LAW GROUP**
>
>
>  /s/ Bryan C. Altman
> Bryan C. Altman, Esq.
> Andrew Jung, Esq.
> Attorneys for Plaintiff,
> **ALAN MANOUKIAN**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

Page(s)

I.   INTRODUCTION ................................................................................ 1

II.  STATEMENT OF FACTS ................................................................... 3

   A. BMW Refuses to Abide by its Obligations Under the Law ............................ 4

   B. Plaintiff Diligently Prepared for Trial After BMW Denied Any Liability ...... 4

   C. BMW's Refusal to Offer Repurcahse ................................................. 9

III. LEGAL ANALYSIS ........................................................................... 9

   A. Plaintiff is the Prevailing Party ...................................................... 9

   B. Plaintiff's Counsel's Lodestar Fees are Reasonable ................................ 11

      i.    Plaintiff's Counsel's Hourly Rates are Reasonable ...................... 12

      ii.   Plaintiff's Counsel's Billable Hours are Reasonable ................... 14

   C. This Case Warrants a Lodestar Multiplier Enhancement of 1.50 ............... 15

      i.    Plaintiff's Counsel Obtained an Excellent Outcome ................... 16

      ii.   Plaintiff's Counsel Endured Substantial Risks Posed by This Litigation ...................................................................... 17

   D. Plaintiff is Entitled to Costs and Litigation Expenses ............................ 18

IV. CONCLUSION ............................................................................... 19

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arntz Cont. Co. v. St. Paul Fire & Marine Ins. Co.*
47 Cal.App.4th 464 (1996) ....................................................................... 19

*Bussey v. Affleck*
(1990) 225 Cal.App.3d 1162 .................................................................... 19

*Cazares v. Saenz*
208 Cal. App. 3d 279 (1989) .................................................................... 17

*Catherine Shepard v. BMW*
(Los Angeles Superior Court Case No. BC622506) ................................. 15

*Charles Margeson v. Ford Motor Company LLC*
(Los Angeles Co. Super. Ct. Civil Case No. BC549430) ..................... 3, 13

*Drouin v. Fleetwood Enterprises*
163 Cal. App 3d 486 (1985) ..................................................................... 10

*Etcheson v. FCA US LLC*
30 Cal. App. 5th 831, 851 (2018) ............................................................. 16

*Estate of Trynin*
49 Cal.3d 868 (1989) .................................................................................. 9

*Goglin v. BMW of N. Am., LLC*
4 Cal. App. 5th 462, 473 (2016) ................................................................. 8

*Graciano v. Robinson FCA Sales, Inc.*
144 Cal. App. 4th 140, 164 (2006) .......................................... 10, 11, 12, 16

*Graham v. DaimlerChrysler Corp.*
34 Cal. 4th 553, 582 (2005) ...................................................................... 16

*Hector Lara Mejia v. Ford Motor Company LLC*
(Los Angeles Co. Super. Ct. Civil Case No. 19STCV21898) ............... 3, 13

*Henrik Zargarian v. BMW of N. Am., LLC*
442 F.Supp.3d 1216, 1226 (C.D. Cal. Mar.3, 2020) ............................... 14

*Hernandez v. General Motors, LLC*
(Los Angeles Co. Super. Ct. Civil Case No. 21STCV34946) .................... 4

*Horsford v. Board of Trustees of Cal. State Uni.*
132 Cal. App. 4th 359 (2005) ................................................................... 14

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

*In re Consumer Privacy Cases*
175 Cal. App. 4th 545, 556-57 (2009)................................................11, 12, 16, 17, 18

*In re Vitamin Cases*
110 Cal. App. 4th 1041 (2003) ...............................................................................16

*Jasmine Lepe v. Chrysler Group, LLC*
Los Angeles Co. Super. Ct. Civil Case No. BC556273 .......................................3, 13

*Ketchum v. Moses*
24 Cal. 4th 1122, 1135 (2001)...............................................................11, 12, 17

*Levy v. Toyota Motor Sales, USA, Inc.*
4 Cal. App. 4th 807 (1992) ........................................................................................12

*Martino v. Denevi*
182 Cal. App. 3d 553 (1986) ...................................................................................14

*Margolin v. Regional Planning Com.*
134 Cal. App. 3d 999, 1005-06 (1982)...................................................................12

*Moreno v. City of Sacramento*
534 F.3d 1106, 1111 (9th Cir. 2008) ......................................................................11

*Niederer v. Ferreira*
189 Cal. App. 3d 1485 (1987) .................................................................................10

*Nightingale v. Hyundai Motor America*
31 Cal. App. 4th 807 (1994) ....................................................................................12

*Reynolds v. Ford Motor Co.*
47 Cal. App. 5th 1105 (2020) ...........................................................................10, 16

*Rumery v. Honda Motor Company, Inc.*
San Joaquin Co. Super. Ct. Civil Case No. STK-UBC-2018-12565 .................3, 13

*Santana v. FCA US, LLC*
2020 WL 6261439, at *10 (Cal. Ct. App. Sept. 29, 2020) ......................................16

*Scott v. Ford Motor Co.*
2020WL8125665, at*3 (C.D.Cal. Nov.24,2020) ...................................................19

*Serrano v. Unruh*
32 Cal. 3d 621, 639 (1982)................................................................................9, 13

*Sommers v. Erb*
2 Cal. App. 4th 1644, 1651 (1992)..........................................................................14

*Syers Properties III, Inc. v. Rankin*
226 Cal. App. 4th 691, 698 (2014).........................................................................11

*Warren v. Kia Motors America, Inc.*

- v -

30 Cal. App. 5th 24 (2018) ......................................................................................18

*Welch v. Metro Life Ins. Co.*
480 F. 3d 942, 945 (9th Cir. 2007) ..........................................................................11

*Wohlgemuth v. Catepillar, Inc.*
207 Cal. App. 4th 1252 (2012)....................................................................................9

*Yi v. BMW of N. Am., LLC*
805 Fed. Appx. 459, 462 (9th Cir. 2020)..................................................................18

*Zomorodian v. BMW*
2019 WL 6534513 (C.D. Cal. July 23, 2019).....................................................15, 19

**STATUTES**

California Civil Code, § 1792.2.................................................................................5
California Civil Code, § 1794(d).................................................1, 2, 9, 10, 16, 18, 19

**OTHER AUTHORITIES**

Leubsdorf, The Contingency Factor in Attorney Fee Awards, 90 Yale L.J. 473
   (1981) ...................................................................................................................17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS,
AND EXPENSES

## I. INTRODUCTION

Plaintiff Alan Manoukian ("Plaintiff") seeks statutorily authorized attorney fees, costs, and expenses following a complete victory by way of jury trial verdict in this "Lemon Law" lawsuit under the Song-Beverly Consumer Warranty Act ("SBA"), Cal. Civ. Code § 1794(d). Plaintiff prevailed over Defendant BMW of North America, LLC ("BMW" or "Defendant") after twenty-three months of litigation, and after BMW failed to abide by its obligations and offer relief pursuant to the SBA prior to Plaintiff filing this lawsuit.

Indeed, Plaintiff successfully obtained a jury verdict in the amount of $59,488.58 against BMW which was represented by experienced trial lawyers. This verdict included a civil penalty in the amount of $34,493.38, because Plaintiff proved Defendant BMW willfully failed to repurchase or replace Plaintiff's vehicle. To refute these claims, BMW enlisted the help of Lehrman, Villegas, Chinery & Douglas, LLP which operates in the warranty and commercial litigation space. BMW, while represented by experienced trial attorneys, refused to offer restitution under the SBA but instead aggressively defended this case by denying all liability until ultimately losing at trial in September 2023. BMW and its counsel claimed this case was not worth a simple repurchase of Plaintiff's vehicle, let alone civil penalty multipliers. That was proven incorrect at trial. Importantly, throughout the pendency of this case BMW and its counsel maintained the erroneous position that Plaintiff's vehicle did not qualify for relief under the SBA, and that BMW was confident it would secure a defense verdict at trial. Defendant was proven wrong.

Remarkably, this action would not have been necessary had BMW agreed to abide by its duties under the SBA by affirmatively offering to repurchase Plaintiff's vehicle prior to filing this lawsuit. BMW knew Plaintiff's 2019 BMW 530i (vehicle identification number WBAJA5C51KWW04157 ("Vehicle")) suffered from substantially impairing defects that prevented Plaintiff from using the Vehicle as intended. BMW was explicitly aware of Plaintiff's extensive repair history in which

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

1   Plaintiff was forced to take the Vehicle to BMW's authorized repair facility no fewer

2   than seven times for electrical, structural, and engine issues. Unsurprisingly, BMW

3   refused to repurchase Plaintiff's Vehicle, thereby ignoring its affirmative obligation

4   under the Lemon Law.

5       After forcing Plaintiff to file this lawsuit, twenty-three months of litigation

6   passed before BMW lost in a jury trial to Plaintiff. BMW is now obligated to pay the

7   jury-determined sum of $59,488.58 to Plaintiff and pay for Plaintiff's attorneys' fees,

8   costs, and expense pursuant to CCP § 1794(d). Significantly, Plaintiff would have

9   accepted this offer prior to filing this lawsuit, or even shortly upon filing. In fact,

10  Plaintiff sent a Rule 68 Offer to Defendant on September 20, 2023, for the buyback

11  amount of $24,679.05; Defendant did not respond to this offer. (Declaration of Andrew

12  Jung "Jung Decl." ¶ 43.) Nonetheless, for twenty-three months Defendant made every

13  attempt to block Plaintiff's discovery efforts while refusing to make reasonable

14  settlement offers in order to push Plaintiff to trial without the benefit of much

15  discovery. Given Plaintiff's willingness to go to trial, Plaintiff victoriously reached a

16  verdict in the amount of $59,488.58 plus attorneys' fees, costs, and expense to be

17  determined by motion.

18      Throughout this case, BMW vehemently denied liability and forced Plaintiff to

19  engage in significant discovery after initially stonewalling Plaintiff's efforts and

20  deploying a very experienced defense trial firm. Plaintiff's litigation efforts included

21  propounding written discovery; reviewing and analyzing hundreds of pages of

22  documents, including, but not limited to, repair orders, pictures, videos, and purchase

23  documents, as well as mechanical research; conducting depositions of Defendant's

24  Person Most Knowledgeable and Expert Witness; conducting extensive investigation

25  regarding the defective Vehicle with Plaintiff's retained expert; fully preparing for trial;

26  and securing a victory at trial. Yet BMW will surely claim that this was a "simple Lemon

27  Law case" and that Plaintiff's efforts were "unnecessary" or their fees "unreasonable."

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Other courts in the State of California routinely award Plaintiff's counsel its requested fees in Lemon Law cases against automobile manufacturers. (Declaration of Kevin Jacobson in Support of Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses ("Jacobson Decl.") ¶¶ 7-16, Exs. 1-9.)  Plaintiff's counsel, Mr. Altman, has routinely had courts approve his hourly rate. *See Anthony Rumery v. Honda Motor Co., Inc.* (San Joaquin Superior Court, Case No. STK-UBC-2018-12565) (approving Mr. Altman's rate of $950/hour); *Jasmine Lepe v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC556273) (approving Mr. Altman's rate of $650/hour); *Charles Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430) (approving Mr. Altman's rate of $650/hour); and *Hector Lara Mejia v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. 19STCV21898) (awarding Mr. Altman a rate of $800/hour). (Declaration of Bryan C. Altman ("Altman Decl.") ¶ 15.) The attorney's fees sought in this matter for the fees incurred by the attorneys who worked on this matter are consistent with numerous courts finding Plaintiff's counsel's hourly rates are reasonable. These rulings underscore the reasonableness of counsel's lodestar here.

Accordingly, Plaintiff seeks reasonably incurred attorneys' fees, costs, and expenses in the amount of $528,092.04. This amount consists of (1) $20,010.00 in attorney fees for Quill & Arrow, LLP ("QA"); (2) $304,625.00 in attorney fees for The Altman Law Group ("TALG"); (3) a 1.50 multiplier enhancement on the attorney fees (or $162,317.50); (4) $17,796.24 in costs incurred by QA; (5) $17,343.30 in costs incurred by TALG; and (6) an additional $6,000.00 for Plaintiffs' counsel to review Defendant's Opposition; draft the Reply; and attend the hearing on this Motion.

## II. STATEMENT OF FACTS

Based on Plaintiff's counsel's experience, BMW and its counsel employ a uniform strategy in Lemon Law cases consisting of deny and delay tactics. First, BMW fails to abide by its affirmative obligation to repurchase the Vehicle and forces Plaintiff to file a

lawsuit. Second, BMW and its counsel vehemently deny any liability and force Plaintiff to uncover the truth through litigation, including asserting seventeen affirmative defenses. Third, BMW refuses to partake in discovery, only providing bare-bones responses to written discovery and refusing to agree to sit for depositions. Fourth, BMW makes low-ball offers – if any – during litigation (here, BMW refused to make *a single offer*) and prevents Plaintiff from obtaining necessary discovery to prove his case at trial. Lastly, BMW, after making a low-ball offer to resolve the attorneys' fees, costs, and expenses will force Plaintiff's counsel to file a fee motion, while arguing litigation was unnecessary because BMW was willing to offer some small amount of "restitution" since the beginning of this case. Not so. *See*, e.g., *Hernandez v. General Motors, LLC*, (Los Angeles Co. Super. Ct. Civil Case No. 21STCV34946). As reflected, Plaintiff's counsel was granted 85% the requested lodestar fees. (Jacobson Decl. ¶ 7, Ex. 1.)

### A. BMW Refuses to Abide by its Obligations Under the Law

On or about January 19, 2019, Plaintiff leased a new 2019 BMW 530i, bearing VIN No.: WBAJA5C51KWW04157 ("Subject Vehicle") from Defendant BMW of North America, LLC's ("Defendant" of "BMW") authorized retail facility New Century BMW for $24,679.05. (Jung Decl. ¶ 3, Ex. 1.) Plaintiff presented the Subject Vehicle to Defendant's BMW dealerships on at least seven occasions, which Defendant's dealerships were unable to repair after a reasonable number of repair opportunities. (*Id.* ¶ 6.) BMW had a duty to repurchase the Subject Vehicle once it was unable to repair the vehicle to conform to the terms of its warranty within a reasonable number of repair opportunity pursuant to the Song-Beverly Consumer Warranty Act. (*Id.* ¶ 7.) Defendant failed to repurchase Plaintiff's vehicle despite BMW's knowledge that its authorized repair facility was unable to repair the Subject Vehicle. (*Id.* ¶ 8.)

### B. Plaintiff Diligently Prepared for Trial After BMW Denied Any Liability

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Plaintiff filed his Complaint on October 29, 2021, seeking relief for, among other things, Defendant's failure to repair or repurchase the Subject Vehicle; Defendant's breach of the express warranty; Defendant's breach of the implied warranty of merchantability; and Defendant's violation of section 1792.2 of the Song-Beverly Act. (Jung Decl. ¶ 9.) Defendant filed its Answer on December 3, 2021, denying all liability to Plaintiff and asserting seventeen affirmative defenses. (*Id.* ¶ 10.) Throughout the pendency of this matter, Defendant BMW never once offered to repurchase or replace Plaintiff's Subject Vehicle, thereby forcing trial in this case. In fact, before this lawsuit was filed Plaintiff reached out to Defendant and requested a buyback – BMW denied this request. Before trial in September 2023, Plaintiff offered to settle the matter for a buyback amount – BMW did not even bother to respond to Plaintiff's settlement offer. (*Id.* ¶ 43.) Plaintiff expects BMW to say Plaintiff's attorney fees are unreasonable and could have been avoided. This is partially true; the fees could have been avoided if BMW had simply done the right thing and taken advantage of any of the numerous times Plaintiff requested to settle the dispute for the sum of the vehicle. Instead, BMW forced trial and must bear the weight of Plaintiff's attorney fees. As such, Plaintiff diligently litigated this case as necessitated by BMW's conduct, including:

- On December 3, 2021, Plaintiff reviewed and analyzed Defendant's Answer to the Complaint. (*Id.* ¶ 11.)
- On December 13, 2021, Plaintiff prepared and served Requests for Admission, Requests for Production of Documents, and Special Interrogatories to Defendant. (*Id.* ¶ 12.)
- On December 20, 2021, Plaintiff prepared a Joint Rule 26(f) report. (*Id.* ¶ 13.)
- On January 3, 2022, Plaintiff prepared and served Rule 26(a)(1) Initial Disclosures and reviewed Defendant's Initial Disclosures and document production. (*Id.* ¶ 14.)

- 5 -
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

- On January 17, 2022, Plaintiff prepared and served Notices of Deposition for multiple individuals, including New Century BMW personnel, Pacific BMW personnel, and BMW of North America, LLC's Person Most Knowledgeable. (*Id.* ¶ 15.)
- On January 31, 2022, Plaintiff prepared a Designation of Expert Witness and supporting Declaration. (*Id.* ¶ 16.)
- On February 4, 2022, Plaintiff reviewed and analyzed Defendant's responses and production related to Set One of Plaintiff's written discovery requests. (*Id.* ¶ 17.)
- On April 25, 2022, Plaintiff attended the Court's Scheduling Conference. (*Id.* ¶ 18.)
- On September 28, 2022, Plaintiff reviewed and analyzed Defendant's Requests for Admissions, Requests for Production of Documents, and Form Interrogatories to Plaintiff. (*Id.* ¶ 19.)
- On October 23-24, 2022, Plaintiff prepared for and attended Plaintiff's deposition. (*Id.* ¶ 20.)
- On October 25, 2022, Plaintiff prepared and served responses to Defendant's written discovery requests. (*Id.* ¶ 21.)
- On October 31, 2022, Plaintiff reviewed and analyzed Defendant's Supplemental Disclosures. (*Id.* ¶ 22.)
- On November 2, 2022, Plaintiff took the deposition of Defendant's Person Most Knowledgeable. (*Id.* ¶ 23.)
- On November 10, 2022, Plaintiff took depositions of Pacific BMW's dealership personnel. (*Id.* ¶ 24.)
- On November 15-18, 2022, Plaintiff prepared and served a meet and confer letter regarding Defendant's Person Most Knowledgeable's deposition. (*Id.* ¶ 25.)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

- On November 28-29, 2022, Plaintiff had internal meetings regarding pre-trial document preparation and settlement discussions before preparing all trial documents. (*Id.* ¶ 26.)

- On December 6-16, 2022, Plaintiff prepared and served a Rule 16(b) Motion regarding the deposition of Defendant's Person Most Knowledgeable. (*Id.* ¶ 27.)

- On December 27-28, 2022, Plaintiff prepared and served a Final Pretrial Conference Statement. (*Id.* ¶ 28.)

- On December 28, 2022, Plaintiff prepared and served sixteen (16) Motions in Limine. (*Id.* ¶ 29.)

- On January 6, 2023, Plaintiff prepared and served Oppositions to Defendant's Motions in Limine. (*Id.* ¶ 30.)

- On January 23, 2023, Plaintiff defended Darrell Blasjo's expert deposition. (*Id.* ¶ 31.)

- On January 24, 2023, Plaintiff took the deposition of Defendant BMW's expert witness, Gabriel Garcia. (*Id.* ¶ 32.)

- From January 27, 2023 – February 7, 2023, Plaintiff diligently prepared for trial, including reviewing all deposition transcripts, drafting examination outlines, preparing demonstratives, interviewing and preparing witnesses, and more. (*Id.* ¶ 33.)

- On June 1, 2023, Plaintiff met and conferred with Defendant regarding a stipulation to continue the trial date. (*Id.* ¶ 34.)

- On June 22, 2023, Plaintiff prepared and served a Motion for Reconsideration Regarding the Court's February 3, 2023 Ruling Granting Defendant's Motion in Limine No. 5 and supporting Declaration. (*Id.* ¶ 35.)

- On July 12, 2023, Plaintiff prepared and served a Reply Brief in Support of Plaintiff's Motion for Reconsideration Regarding the Court's Ruling Granting Defendant's Motion in Limine No. 5.  (*Id.* ¶ 36.)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

- On July 25, 2023, Plaintiff attended the hearing on Plaintiff's Motion for Reconsideration. (*Id.* ¶ 37.)
- From August 24, 2023 – September 5, 2023, Plaintiff reviewed and analyzed Defendant's Motion for Reconsideration before drafting an Opposition to Defendant's Motion. (*Id.* ¶ 38.)
- From September 19, 2023 – September 24, 2023, Plaintiff prepared for trial, including drafting the opening statement, creating demonstratives, gathering and reviewing exhibits and deposition transcripts, drafting and revising witness examination outlines, reviewing past trial transcripts, interviewing and preparing witnesses, and more. (*Id.* ¶ 39.)
- From September 26, 2023 – October 3, 2023, Plaintiff attended trial, which included preparation each day for the subsequent trial days. (*Id.* ¶ 40.)
- On October 12, 2023, Plaintiff prepared and lodged a Notice of Lodging of Jury Verdict. (*Id.* ¶ 41.)

Indeed, Plaintiff's efforts were both reasonable and necessary to establish BMW's liability in this case and to protect against surprise at trial. Plaintiff's counsel achieved an outstanding result by securing a jury verdict in favor of Plaintiff's claims, including civil penalties against Defendant BMW. This outstanding result is a direct result of Plaintiff's counsel's diligence and efforts. BMW will surely argue in its opposition to this Motion that Plaintiff excessively litigated this case and that the fees are not reasonable. Not so. *Goglin v. BMW of N. Am.*, LLC, 4 Cal. App. 5th 462, 473 (2016) ("[U]ntil the case actually settled, Goglin had to conduct discovery and prepare to prove liability on her varied claims with their varied elements. She also had to be prepared to counter the numerous affirmative defenses raised in the answers to her complaint. We, therefore, cannot conclude the court abused its discretion in finding the time spent by Goglin's counsel on litigation activities was reasonable.").

Accordingly, Plaintiff requests a total award of $528,092.04 in attorney fees, costs, and expenses. (Jacobson Decl. ¶¶ 31-34, Ex. 10.) (Altman Decl. ¶ 17, Ex. C.)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

1    ///

2    ///

3          **C. BMW's Refusal to Offer Repurchase**

4          Per its standard practice, BMW and its counsel maintained the erroneous position

5    that Plaintiff's vehicle did not qualify for relief under the SBA and that BMW was

6    confident it would secure a defense verdict at trial. After forcing Plaintiff to file this

7    lawsuit, BMW refused to partake in most aspects of litigation, including written

8    discovery and deposition practice. After twenty-three months of litigation, Plaintiff

9    defeated BMW in trial. For almost two years, Defendant made every attempt to block

10   Plaintiff's discovery efforts while refusing to make reasonable settlement offers to

11   push Plaintiff to trial without the benefit of discovery. Given Plaintiff's willingness to

12   go to trial, Plaintiff was fully prepared for trial and secured a verdict in the amount of

13   $59,488.58, plus attorneys' fees, costs, and expense to be determined by motion.

14   **III. LEGAL ANALYSIS**

15        **A. Plaintiff is the Prevailing Party**

16        Under the SBA, if a buyer prevails in an action under the SBA, he or she may

17   recover the aggregate amount of costs and expenses, ***including attorney fees*** based on

18   actual time expended, determined by the court to have been reasonably incurred by the

19   buyer in connection with the commencement and prosecution of such action. Cal. Civ.

20   Code § 1794(d) (emphasis added). *Wohlgemuth v. Caterpillar, Inc.*, 207 Cal. App. 4th

21   1252, 1262 (2012) ("[T]he provision for recovery of costs and attorney fees in [Civil

22   Code] section 1794(d) is an important aspect of this consumer protection, and without

23   it many would not be financially able to pursue a remedy."). Such mandatory

24   recoverable fees and costs include those "necessary to establish and defend th[is] fee

25   claim . . . ." *Serrano v. Unruh*, 32 Cal. 3d 621, 639 (1982); *Robertson v. Fleetwood*

26   *Travel Trailers of California, Inc.,* 144 Cal. App. 4th 785, 817 (2006) (fees for fee-

27   and-cost motion) (remanded on other grounds); *Estate of Trynin*, 49 Cal.3d 868, 874

28   (1989) ("Where the right to counsel fees is based on statute, recovery for fee-related

- 9 -

services has been consistently allowed."). Plaintiff is entitled to recover his fees in connection with this Motion.

Indisputably, Plaintiff is the prevailing party for the purposes of attorney fees. Pursuant to the SBA, an award of attorney fees and costs to Plaintiff as the prevailing party is mandatory:

> If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to **the aggregate amount of costs and expenses, including attorney's fees** based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

Cal. Civ. Code. § 1794(d). (emphasis added.)

Moreover, California courts have consistently "rejected the notion the fee award must be proportionate to the amount of damages recovered." *Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1508 (1987); *Drouin v. Fleetwood Enterprs*., 163 Cal. App 3d 486, 493 (1985) ("[A]n attorney's fee is to be based upon actual time expended rather than being tied to any percentage of the recovery. This requirement is designed to make the pursuit of consumer rights involving inexpensive consumer products economically feasible... The trial court did not err in calculating attorneys fees based on actual time expended."). Because Plaintiff is suing "under consumer protection statues involving mandatory fee-shifting provision, the legislative policies are in favor of [] recovery of all attorney fees reasonably expended, without limiting the fees to a proportion of [] actual recovery." *Graciano v. Robinson FCA Sales, Inc.*, 144 Cal. App. 4th 140, 164 (2006). *Reynolds v. Ford Motor* Co., 47 Cal. App. 5th 1105 (2020) ("Many statutory fee-award provisions begin with the lodestar method but are governed by the specific statutory requirement that the final fee award be 'reasonable' in nature. No such requirement is found in the Song-Beverly Act. The fee award must be based on the court's calculation of the 'actual time expended ... determined by the court to have been reasonabl[y] incurred.' [(§ 1794(d).)] The legislature did not include a requirement that

- 10 -

the court also determine [whether] the fees are reasonable in amount. Had the legislature intended such a requirement, it could easily have so stated…The court's review of the overall reasonableness of the attorney fees is, thus, restricted by the specific language in the fee award provision of the Song-Beverly Act.").

### B. Plaintiff's Counsel's Lodestar Fees are Reasonable

Reasonable attorney fees are determined by using the lodestar method. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). *See also Ketchum v. Moses*, 24 Cal. 4th 1122, 1135 (2001) (California Supreme Court endorsing lodestar method as prevailing method for statutory fee awards); *Syers Properties III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 698 (2014) ("*Ketchum v. Moses* 'reaffirmed the primacy of the lodestar method for all fee-shifting statutes....'") (emphasis in original).

California's lodestar/multiplier method is calculated using a simple two-step process:

**Step One**: The trial court determines a lodestar value for the fees by multiplying the time reasonably spent by Plaintiff's counsel on the case by a reasonable hourly rate. *See In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556-57 (2009).

**Step Two**: The trial court may then adjust or enhance the lodestar by applying a multiplier to take into account the contingent nature and risk associated with the action, as well as other factors, such as the degree of skill required and the results achieved. *Id.*; *see also Ketchum*, 24 Cal. 4th at 1130, 1137 (appellate court erred in concluding it lacked authority to enhance prevailing party's lodestar). Similarly, the Ninth Circuit utilizes the lodestar method for calculating reasonable attorneys' fees, "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Welch v. Metro Life Ins. Co.,* 480 F. 3d 942, 945 (9th Cir. 2007). The lodestar approach "anchors the trial court's analysis to an objective

determination of the attorney's services, ensuring the amount awarded is not arbitrary." *Graciano*, 144 Cal. App. 4th at 154 (emphasis added).

///

### i. Plaintiff's Counsel's Hourly Rates are Reasonable

The hours billed by counsel are to be multiplied by a "reasonable hourly rate" to generate the lodestar. *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556. In determining an appropriate hourly rate, the trial court should apply rates commensurate with the "hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." *Ketchum*, 24 Cal. 4th at 1133. Evidence of hourly rates sought by and awarded to the same law firm in other cases, as well as experience of counsel, are "obviously relevant" to the attorney fees determination. *Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1005-06 (1982).

Plaintiff anticipates that BMW will attempt to mislead this Court in its Opposition by citing *Nightingale v. Hyundai Motor America,* 31 Cal. App. 4th 807 (1994), and *Levy v. Toyota Motor Sales, USA, Inc.*, 4 Cal. App. 4th 807 (1992), in support of its erroneous argument that the lodestar and multiplier approach does not apply and that the Court should reduce Plaintiff's requested fees. ***Nightingale* and *Levy* do not apply to contingent fee cases.** *Nightingale* and *Levy* did not involve contingency cases, as is the case here. (Jacobson Decl. ¶ 30.) In *Nightingale*, the plaintiff's attorney represented the consumer on an hourly basis and subsequently sought to obtain a higher rate than the rate she actually charged the consumer. The appellate court rejected the higher rate. The plaintiff's attorney in *Levy* also had an hourly rate agreement rather than a contingent fee agreement.

Accordingly, in the absence of contrary evidence, a moving party's showing of rates that have been upheld "compel[] a finding that the requested hourly rates were within the reasonable rates for purposes of setting the base lodestar amount." *Graciano*, 144 Cal. App. 4th at 156. Plaintiff's counsel, in presenting evidence of their basic hourly rates, need not "explain the basis on which those hourly rates were awarded to

counsel in other cases, the nature of other litigation, its difficulty and other factors which might have affected the award." The basic rates merely are the starting point of a fee award calculation. *Margolin*, 134 Cal. App. 3d at 1005. Consideration of the other factors listed only occurs after the court fixes the hourly rate and the number of hours spent, as part of the analysis to determine whether the total fees should be modified. *Id.* (citing *Serrano*, 20 Cal. 3d at 49).

The hourly rates for the attorneys who worked on this case are as follows: (1) Kevin Jacobson (2020-2023 rate of $500.00/hr.); (2) Gregory Sogoyan (2022 rate of $450/hr., and 2023 rate of $500/hr.); (3) Nicholas Yowarski (2021 rate of $350/hr., 2022 rate of $375.00/hr., and 2023 rate of $395.00/hr.); (4) Sarah Pfeffer (2022 rate of $350/hr.); (5) Joshua Kohanoff (2023 rate of $350.00/hr.); (6) Luis Serrano (2023 rate of $350.00/hr.); (7) Andrew Jung (2022-2023 rate of $400/hr.) and (8) Bryan Altman (2022-23 rate of $950.00/hr.). These rates are appropriate given the relative experience and qualifications of these attorneys. (*See* Jacobson Decl. ¶¶ 7-26.) (*See also* Altman Decl. ¶¶ 9-13.) The rates sought by Plaintiff's counsel are similar to the rates that this Court and other California State Courts have awarded in other lemon law cases. (*Id.*) *See Anthony Rumery v. Honda Motor Co., Inc.* (San Joaquin Superior Court, Case No. STK-UBC-2018-12565) (approving Mr. Altman's rate of $950/hour); *Jasmine Lepe v. Chrysler Group, LLC* (Los Angeles Superior Court, Case No. BC556273) (approving Mr. Altman's rate of $650/hour); *Charles Margeson v. Ford Motor Company* (Los Angeles Superior Court, Case No. BC549430) (approving Mr. Altman's rate of $650/hour); and *Hector Lara Mejia v. Ford Motor Company LLC* (Los Angeles Superior Court, Case No. 19STCV21898) (awarding Mr. Altman a rate of $800/hour).

One of the more popular and sensible methods employed by courts in assessing hourly rates is the Laffey Fee Matrix, which is frequently used in Federal Courts across the Country, as well as by California Superior Courts. *See, Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 U.S. Dist. LEXIS

123546, at *49-53 (C.D. Cal. July 21, 2008) ("*Fernandez*") (showing detailed application of the matrix); *Nemecek & Cole v. Horn* (2012) 208 Cal. App. 4th 641, 651 (upholding an hourly rate established by the Laffey Matrix).

Looking at the Laffey Fee Matrix, the Court will see the fees requested in this case are actually *lower* than the fees outlined in the matrix. (Altman Decl. ¶ 20, Ex. D.) And while "[c]ourts in this circuit are divided as to whether the *Laffey* matrix is an accurate measure of attorneys' fees in mixed rate cases outside the District of Columbia[,] . . . [d]espite this disagreement, where use of the *Laffey* matrix has been disproved, it has been because it produced a rate that the court determined was *too low*." *Fernandez*, 208 Cal. App. 4th at 50.

### ii. Plaintiff's Counsel's Billable Hours are Reasonable

Plaintiff's fee recovery is based on the approximately 492 hours spent by his attorneys litigating this case through this motion. The fees incurred are reasonable, as captured in the billing records submitted to this Court. (Jacobson Decl. ¶ 27, Ex. 10.) (Altman Decl. ¶ 17, Ex. C.) Plaintiff's counsel's billing records reflect the actual time and clear descriptions of services performed in connection with litigating this case, which has been carefully reviewed and audited to remove any entry that may be duplicative, redundant, unnecessary, or otherwise. (*Id.*) Although the submission of such detailed time records is not necessary under California law, *see Martino v. Denevi*, 182 Cal. App. 3d 553, 559 (1986); *Sommers v. Erb*, 2 Cal. App. 4th 1644, 1651 (1992), if submitted, such records "are entitled to credence in the absence of a clear indication the records are erroneous," *Horsford v. Board of Trustees of California State University*, 132 Cal. App. 4th 359, 396 (2005). Indeed, this case was neither "over-staffed" or incurred "duplicated efforts" as Defendant may argue. (Jacobson Decl. ¶ 27, Ex. 10.) (Altman Decl. ¶ 17, Ex. C.)

Courts routinely determine the billing submitted by Plaintiff's counsel is reasonable, and that the work was performed efficiently without duplication or excessive building. *See Henrik Zargarian v. BMW of N. Am.*, LLC, 442 F.Supp.3d 1216, 1227

(C.D. Cal. Mar. 3, 2020) (the Court approved plaintiff's rates ranging from $335/hr-$600/hr and approved 100% of Plaintiff's requested lodestar. On pages 1228-1229 of the opinion, the Court also notes "Defendant contends that Plaintiff billed for 'duplicative,' 'excessive,' and 'unrelated' work, and further, 'unnecessarily [ran up fees when it [was] not warranted to do so' by hiring three different law firms to work on this matter….Here, the Court does not take issue with Plaintiff's counsel's staffing decisions; from the billing records, it is clear that there was a strict division of labor between the firms, and the Court finds no evidence of duplicative work between the firms." (Jacobson Decl. ¶ 9, Ex. 3.); *Jerry Zomorodian v. BMW* (United States District Court for the Central District of California Case No. 2:17-cv 5061-DMG), 2019 WL 6534513, in which the Court approved Plaintiff's requested attorney rates ranging from $325/hour to $695/hour. On page 10 of the opinion, the Court also notes "While the use of 13 attorneys in this case certainly suggests overstaffing, the Court has reviewed the hours billed with care and has determined that most of the hours billed by the 13 different attorneys have not been duplicative." (Jacobson Decl. ¶ 15, Ex. 8.); *Catherine Shepard v. BMW* (Los Angeles Superior Court Case No. BC622506) in which the Court approved Plaintiff's rates and granted 100% of Plaintiff's requested lodestar. On page 4 of this opinion, the Court notes "Based on its review of the evidence presented (including the work and time entries on the attorney's bills), the court finds that the billing entries in Shepard's attorneys' bills do not evidence inefficient or unreasonable billing, duplication of effort, padding of time entries, overconferencing or multiple attendance by attorneys at the same court functions, as a result of the staffing and division of labor amongst Shepard's attorneys on this case." (Jacobson Decl. ¶ 16, Ex. 9.)

Significantly, none of this litigation would have been necessary if BMW abided by its obligations under the SBA and repurchased Plaintiff's Vehicle prior to filing this lawsuit.

### C.   This Case Warrants a Lodestar Multiplier Enhancement of 1.50

- 15 -

Once determined, the lodestar amount can be increased by a "multiplier enhancement" that is based on several factors, including: (1) the risks presented by the litigation; (2) the novelty and difficulty of the legal and factual issues involved; (3) the results obtained on behalf of the plaintiff; and (4) the skill exhibited by counsel. *See, e.g., In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009); *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1052 (2003); *Graciano*, 144 Cal. App. 4th at 154. *See also Reynolds v. Ford Motor Co*., No. A154811, 2020 WL 1921742, at **2, 4 (Cal. Ct. App. Apr. 21, 2020) (published) (upholding trial court award in SBA lemon law matter of $201,891 lodestar and 1.2 multiplier "based on the following factors: the complexity of the factual issues, counsel's extensive experience in this type of litigation, and '[i]n litigating these types of cases with a large corporate defendant such as FCA, many attorneys may decline to represent plaintiff due to the financial resources of defendant and the prospect of long and hard fought litigation.'"); *Santana v. FCA US, LLC*, 2020 WL 6261439, at *10 (Cal. Ct. App. Sept. 29, 2020) (affirming an award of over a $500,000 in attorney fees that included a multiplier of 2.0 in a lemon law case where the plaintiff prevailed). "[T]he fact that counsel seeks a multiplier as a component of its fee request … is not itself a proper factor in determining the reasonableness of sought-after fees. In fact, it is not unusual for counsel to ask for a multiplier in contingent fee cases as this one." *Etcheson v. FCA US LLC*, 30 Cal. App. 5th 831, 851 (2018). This Court should apply a multiplier of 1.50 (or $162,317.5), because this case meets the factors set forth below. Significantly, BMW and its counsel maintained the erroneous position that Plaintiff's vehicle did not qualify for relief under the SBA and that BMW was confident it would secure a defense verdict at trial. This was proven wrong, as Plaintiff prevailed at trial.

### i. Plaintiff's Counsel Obtained an Excellent Outcome

"The 'results obtained' factor can properly be used to enhance a lodestar calculation where an exceptional effort produced an exceptional benefit." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 582 (2005). Here, after nearly two years of

litigation, Plaintiff defeated Defendant BMW at trial and secured a jury verdict of $59,488.58 (which included civil penalties). Defendant must now pay for Plaintiff's attorneys' fees, costs, and expense pursuant to CCP § 1794(d). Significantly, Plaintiff would have accepted a similar offer prior to filing this lawsuit, or even shortly upon filing. In fact, Plaintiff sent a Rule 68 Offer to Defendant on September 20, 2023, for the buyback amount of $24,679.05; Defendant did not respond to this offer. (Jung Decl. ¶ 43.) Nonetheless, for almost two years, Defendant made every attempt to block Plaintiff's discovery efforts while refusing to make reasonable settlement offers to push Plaintiff to trial without the benefit of discovery. Given Plaintiff's willingness to go to trial, Plaintiff victoriously secured a jury verdict of $59,488.58. Undoubtably, this is an outstanding result. The recovery is particularly impressive given the history of this case: Prior to, and during the pendency of, litigation, BMW refused even to repurchase the Vehicle and defense counsel maintained the position that this case did not qualify for relief under the SBA and that Defendant was confident it would obtain a defense verdict at trial. *See In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556 (holding that courts may increase lodestar by taking into account quality of representation and results obtained).

<u>ii. Plaintiff's Counsel Endured Substantial Risks Posed by This Litigation</u>

Another factor considered in awarding a multiplier is the risk of non-recovery or delayed recovery that counsel shouldered in taking on the case. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001) ("The lodestar adjustment approach … allows a court awarding attorney fees to include a fee enhancement for the purpose, e.g., of compensating the attorney who agreed to undertake such representation at the risk of nonpayment or delayed payment …."). "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Id.* at 1333 (quoting *Leubsdorf, The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981)). *See also*

1  *Cazares v. Saenz*, 208 Cal. App. 3d 279, 287-88 (1989) (noting that contingency-based

2  fee "may properly provide for a larger compensation than would otherwise be

3  reasonable" given the "economic considerations separate and apart from the attorney's

4  work on the case."). *See Yi v. BMW of N. Am.*, LLC, 805 Fed. Appx. 459, 462 (9th Cir.

5  2020)

6       BMW enlisted Lehrman, Villegas, Chinery & Douglass, LLP, which operates

7  in California and operates in the warranty and commercial litigation space. BMW,

8  while represented by experienced trial attorneys, refused to offer restitution under the

9  SBA but instead aggressively defended this case by denying all liability until ultimately

10  losing at trial. Importantly, throughout the pendency of this case, BMW and its counsel

11  maintained the erroneous position that Plaintiff's vehicle did not qualify for relief

12  under the SBA and that BMW confident that it would secure a defense verdict at trial.

13  Further, Plaintiff's counsel paid all costs which totaled over $30,000 out-of-pocket.

14  Plaintiff's counsel would bear these costs if unsuccessful at trial. Ultimately, litigating

15  against BMW poses a substantial risk of no recovery and a multiplier is thus more

16  than justified. *See In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009)

17  (in determining a multiplier, courts look, *inter alia*, to the risks presented).

18  **D. Plaintiff is Entitled to Costs and Litigation Expenses**

19       Plaintiff is also entitled to recover all the costs *and expenses* reasonably incurred

20  in prosecuting the case—*in addition to recovering attorney's fees*. Civ. Code § 1794(d).

21  Inclusion of the word "expenses" in Civil Code section 1794(d) reveals that items

22  beyond statutory costs enumerated under Code of Civil Procedure section 1033.5 are

23  recoverable. *Jensen v. BMW of N. Am., LLC*, 35 Cal. App. 4th 112, 137-38 (1995)

24  (examining Legislative history of SBA to determine that "costs and expenses" language

25  to be interpreted broadly to include such things as filing fees, expert witness fees,

26  marshal's fees, etc., to "open the litigation process to everyone."); *Warren v. Kia Motors*

27  *Am., Inc.*, 30 Cal. App. 5th 24, 42-43 (2018) (finding that the trial court abused its

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS,
AND EXPENSES

discretion in excluding trial transcript costs from plaintiff's cost award, and holding that trial transcripts, though not ordered by the court or enumerated in section 1032, were nonetheless recoverable under section 1794(d)). "Expenses" includes all expenses not part of overhead and ordinarily billed to paying clients regardless of whether recoverable under § 1033.5. *Bussey v. Affleck*, 225 Cal. App. 3d 1162 (1990); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co., 47 Cal. App. 4th 464, 491 (1996) (holding litigation expenses far broader than costs). See also Scott v. Ford Motor Co*., 2020WL8125665, at*3 (C.D.Cal. Nov.24,2020) ("California law provides that prevailing plaintiff can recover expert witness fees under section1794(d).") (quoting *Zomorodian v. BMW of N. Am*., LLC, 332 F.R.D. 303, 307 (C.D. Cal. 2019)). "Defendant objects that these costs are not allowable under the Local Rules. But because the Court applies Section 1974(d), Plaintiff's recovery is not limited to taxable costs under the Local Rules." *Scott*, 2020 WL 8125665, at*3. Accordingly, the Court should order BMW to reimburse Plaintiff's $35,139.54 in litigation costs and expenses. (*See* Jacobson Decl. ¶ 27-30, Ex. 10.)

## IV. CONCLUSION

For the aforementioned reasons, this Court should order BMW to pay a total amount of $528,092.04. This amount consists of (1) $20,010.00 in attorney fees for Quill & Arrow, LLP ("QA"); (2) $304,625.00 in attorney fees for The Altman Law Group ("TALG"); (3) a 1.50 multiplier enhancement on the attorney fees (or $162,317.5); (4) $17,796.24 in costs incurred by QA; (5) $17,343.30 in costs incurred

///

///

///

///

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

by TALG; and (6) an additional $6,000.00 for Plaintiffs' counsel to review Defendant's Opposition; draft the Reply; and attend the hearing on this Motion

Dated:   October 27, 2023

Respectfully submitted,
**THE ALTMAN LAW GROUP**


*/s/ Bryan C. Altman*
Bryan C. Altman Esq.
Andrew Jung, Esq.
Attorneys for Plaintiff,
**ALAN MANOUKIAN**

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES