**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALAN MANOUKIAN,                              ) | NO. CV 21-8813-KS |
|                                             ) | |
|       Plaintiff,                     ) | |
|                                             ) | ORDER GRANTING IN PART |
|     v.                                      ) | PLAINTIFF'S MOTION FOR |
|                                             ) | ATTORNEYS' FEES [DKT. NO. 172] |
| BMW OF NORTH AMERICA, LLC,                   ) | |
|                                             ) | |
|       Defendant.                    ) | |
|                                             ) | |
| _____ ) | |

**INTRODUCTION**

Before the Court is Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses (Dkt. No. 172 ("Motion")), filed on October 27, 2023, supported by the Declaration of Attorney Kevin Jacobson and ten exhibits consisting of billing records for this case from the law firm of Quill & Arrow LLP, and copies of nine orders involving attorney fees in ostensibly analogous cases.  (Dkt. Nos. 172-1—172-11.[1])  The Motion is also supported by the Declaration of Attorney Bryan C. Altman and five additional exhibits, including a copy of the 2017-2018 U.S.

_____

[1] For clarity and ease of reference, the Court cites the document and page numbers provided by its CM-ECF docketing system.  The page numbers are located at the top right of each page.

1

Consumer Law Attorney Fee Survey Report ("CL Report"); a tentative ruling on a fee order dated October 27, 2023, issued by the San Joaquin County Superior Court; Plaintiff's Notice of Association of Counsel filed in the instant matter on September 15, 2022; billing records for this case from The Altman Law Group; and a copy of the Laffey Matrix for calculating attorney fees by position and seniority.  (Dkt. Nos. 172-12—172-17.)  Finally, the Motion is further supported by the Declaration of Attorney Andrew Jung, accompanied by a copy of the January 19, 2019 lease agreement between Plaintiff and Defendant.  (Dkt. Nos. 172-18—172-19.)

Defendant BMW of North America, LLC ("Defendant") filed a Memorandum of Points and Authorities in opposition to the Motion on November 15, 2023, with a supporting Declaration of Attorney Daniel R. Villegas.  (Dkt. Nos. 173, 173-1.)  On November 21, 2023, Plaintiff filed a Reply supported by a second Declaration of Attorney Andrew Jung and four additional exhibits: a copy of this Court's Minute Order of February 8, 2023 continuing the trial date and setting a status conference; a June 2, 2023 stipulated order to continue the trial; a Los Angeles Superior Court order in a different case dated August 30, 2021; and a copy of the first transcript page for the October 24, 2022 videoconference deposition of Plaintiff.  (Dkt. Nos. 174, 174-1—174-4.)  On December 6, 2023, the Court heard oral argument and took the matter under submission.  (Dkt. No. 178.)

Having thoroughly considered the parties' briefing and the arguments of counsel at the hearing, for the reasons outlined below, the Court GRANTS the Motion in part and finds that a total award to Plaintiff in the amount of **$277,955** comprises the total reasonable allowable fees incurred in connection with the litigation in this matter.

## BACKGROUND

On January 19, 2019, Plaintiff leased a new 2019 BMW 530i Sedan from New Century BMW in Alhambra, California.  (Dkt. No. 172-19 at 2-8.)  Plaintiff alleges that the subject

vehicle "was delivered to Plaintiff with serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty including, but not limited to, the engine, structural, suspension, steering, and electrical system defects." (Compl. (Dkt. No. 1) ¶ 3.) On February 22, 2022, Plaintiff commenced the instant lawsuit in this Court by filing the Complaint. (Dkt. No. 1.) The Complaint alleges violations of California's Song-Bervely Consumer Warranty Act, Cal. Civ. Code §§ 1790 et seq. ("SBA"), including breach of an express warranty (Count one); reach of the implied warranty of merchantability (Count two); and the failure to complete repairs within a reasonable time or tender back the subject vehicle (Count three). (Compl. ¶¶ 19-59.) Defendant answered the Complaint on December 3, 2021. (Dkt. No. 11.) On April 6, 2022, the parties consented to proceed before the undersigned Magistrate Judge. (Dkt. No. 28.)

The parties litigated this case for approximately 22 months, culminating in a jury trial that commenced on September 26, 2023, and concluded on October 3, 2023, when the jury returned a unanimous verdict in favor of Plaintiff. (Dkt. No. 168.) Consistent with the jury's verdict, on October 13, 2023, the Court entered judgment for Plaintiff and against Defendant in the amount of $59,488.58, which included $24,995.20 in stipulated damages and $34,493.38 in civil penalty damages. (Dkt. No. 171.) The Court additionally found that it "shall decide all issues involving fees, costs, expenses, and prejudgment interest by post-verdict motion(s)." (*Id.*) As noted, Plaintiff made the pending Motion on October 27, 2023. (Dkt. No. 172.)

## THE PARTIES' POSITIONS

### The Motion

Plaintiff's Motion "seeks statutorily authorized attorney fees, costs, and expenses following a complete victory by way of jury trial verdict in this 'Lemon Law' lawsuit under

1    the Song-Beverly Consumer Warranty Act," California Civil Code section 1794(d).  (Dkt. No.

2    172 at 7.)  Specifically, Plaintiff requests that the Court award Plaintiff's counsel:

> attorneys' fees, costs, and expenses in the amount of $528,092.04.   This
> amount consists of (1) $20,010.00 in attorney fees for Quill & Arrow, LLP [];
> (2) $304,625.00 in attorney fees for The Altman Law Group []; (3) a 1.50
> multiplier enhancement on the attorney fees (or $162,317.50); (4) $17,796.24
> in costs incurred by [Quill & Arrow, LLP]; (5) $17,343.30 in costs incurred
> by [The Altman Law Group]; and (6) an additional $6,000.00 for Plaintiffs'
> counsel to review Defendant's Opposition; draft the Reply; and attend the
> hearing on this Motion.

(*Id.* at 9.)

In support, Plaintiff argues that as the prevailing party under the relevant statute he is entitled to recover costs and expenses, that the hourly billing rates and time billed by Plaintiff's counsel were reasonable for the case, that Plaintiff's counsel should be granted a lodestar multiplier for the outcome obtained and the risks posed by this litigation, and that Plaintiff's counsel is entitled to reimbursement of costs and litigation expenses.  (*Id.* at 15-26.)

### The Opposition

In opposition, Defendant contends that the hourly rates sought by Plaintiff are unreasonable in light of the "non-complex nature of the case," that Plaintiff's attorneys billed excessive hours and rates for performing a number of routine, unnecessary, or unsuccessful tasks (addressed individually below), and that the Court should not award any lodestar multiplier.  (Dkt. No. 173 at 5-19.)

\\

4

**The Reply**

In the Reply, Plaintiff argues that this was, in fact, a complex case, and reiterates his argument that his counsel's billing rates and hours billed were reasonable.  (Dkt. No. 174 at 7-9.)  Plaintiff also attempts to rebut specific arguments made by Defendant concerning alleged block billing, alleged "value billing," and the reasonableness of the time spent by Plaintiff's counsel on various tasks.  (*Id.* at 9-14.)  Finally, Plaintiff reiterates that a lodestar multiplier is warranted.  (*Id.* at 14-15.)

**LEGAL STANDARD**

Under the SBA, a prevailing buyer:

> shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

Cal. Civ. Code § 1794(d).  The court must base any fee award "upon actual time expended on the case, as long as such fees are reasonably incurred – both from the standpoint of time spent and the amount charged."  *Lang v. Ford Motor Co*., No. 2:21-cv-05376-FWS, 2023 WL 3149274, at *2 (C.D. Cal. Mar. 17, 2023) (*quoting Warren v. Kia Motors Am., Inc.*, 30 Cal. App. 5th 24, 35 (Cal. Ct. App. 2018).  Where the prevailing buyer is represented on a contingency fee basis, the buyer is entitled to recover "reasonable attorney fees for time reasonably expended."  *Glover v. Mercedes-Benz USA*, No. 8:21-cv-01969-JDE, 2022 WL 17080196, at *2 (C.D. Cal. Aug. 9, 2022) (*quoting Warren*, 30 Cal. App. 5th at 35).

1    In examining reasonableness, a court must "ascertain whether under all the
2    circumstances of the case the amount of actual time expended and the monetary charge being
3    made for the time expended are reasonable." *Rahman v. FCA US LLC et al.*, 594 F. Supp. 3d
4    1199, 1203 (C.D. Cal. 2022) (*quoting Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99,
5    104 (Cal. Ct. App. 1994)).  Moreover:

6

7        [It] is important to note that we are not concerned in this case with a customary
8        statutory or contractual provision which merely provides for "reasonable
9        attorney fees."  The statute we are dealing with takes a somewhat different
10       approach.  It requires the trial court to make an initial determination of the
11       actual time expended; and then to ascertain whether under all the
12       circumstances of the case the amount of actual time expended and the
13       monetary charge being made for the time expended are reasonable.  These
14       circumstances may include, but are not limited to, factors such as the
15       complexity of the case and procedural demands, the skill exhibited and the
16       results achieved. . . . A prevailing buyer has the burden of "showing that the
17       fees incurred were 'allowable,' were 'reasonably necessary to the conduct of
18       the litigation,' and were 'reasonable in amount.'"

19

20   *Id.*

21

22    In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court adopted the lodestar
23   method for calculating attorneys' fee awards.  Under the lodestar method, a court multiplies
24   the number of hours reasonably expended on a particular motion by a reasonable hourly rate.
25   *Id.* at 433.  "When faced with a massive fee application the district court has the authority to
26   make across-the-board percentage cuts either in the number of hours claimed or in the final
27   lodestar figure as a practical means of trimming the fat from a fee application." *In re Ford*
28   *Motor Co. DPS6 Powershift Transmission Products Liability Lit.*, No. ML 18-02814 AB

(PVCx), 2021 WL 3163799, at *6 (C.D. Cal. July 22, 2021) (*quoting Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992)). "A court that exercises its discretion to reduce the lodestar amount by an across-the-board percentage reduction typically must explain its reasons for doing so." *Id.* (*quoting Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013)). "Nevertheless, the district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation." *Id.* (*quoting Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

## DISCUSSION

### A. Plaintiff's Counsel's Billing Rates

The Court begins the lodestar analysis by determining whether Plaintiff's counsel's billing rates are reasonable. Plaintiff represents that six attorneys from the law firm of Quill & Arrow, LLP and two or three attorneys from The Altman Law Group worked on and billed to this case as follows:

| Attorney | Firm | Seniority | Billing Rate |
|---|---|---|---|
| Kevin Jacobson | Quill & Arrow | Managing Partner | $500/hr. |
| Gregory Sogoyan | Quill & Arrow | Partner | $500/hr. in 2023; $450/hr. in 2022 |
| Nicholas Yowarski | Quill & Arrow | Associate | $395/hr. in 2023; $375/hr. in 2022; $350/hr. in 2021 |
| Sarah Pfeffer | Quill & Arrow | Associate | $350/hr. |
| Joshua Kohanoff | Quill & Arrow | Attorney (seniority not specified) | $350/hr. |

| Luis Serrano | Quill & Arrow | Attorney (seniority not specified) | $350/hr. |
|---|---|---|---|
| Bryan C. Altman | Altman Law Group | Managing Attorney | $950/hr. |
| Andrew Jung | Altman Law Group | Associate | $400/hr. |
| Danja Stocca | Altman Law Group | Not provided | $325/hr. |

(Dkt. No. 172-1 at 2-3, 5-9; Dkt. No. 172-12 at 4, 12; Dkt. No. 172-16 at 25, 27, 29.)[2]

Attorney Kevin Jacobson represents that he is the managing partner of Quill & Arrow, LLP, which he co-founded in 2019 "with a primary focus in Song-Beverly cases, as well as personal injury cases." (Dkt. No. 172-1 at 2.) Mr. Jacobson has more than ten years of experience as an attorney and, in his role as managing partner of Quill & Arrow, LLP, is "responsible for overseeing all the associates of the firm and the litigation strategy of the thousands of cases that the firm litigates." (*Id.*) In addition, Mr. Jacobson states that he has "successfully negotiated settlements totaling millions of dollars on behalf of consumers." (*Id.*)

Gregory Sogoyan is a partner at Quill & Arrow, LLP, with "extensive experience involving the Song-Beverly Consumer Warranty Act and Magnuson Moss Warranty Act, as well as consumer fraud." (*Id.* at 5-6.) Further, "[p]rior to joining Quill & Arrow, LLP, Mr.

---

[2] There appears to be confusion over the position of one individual from The Altman Law Group, Danja Stocca, who only appears in three billing entries but is otherwise unidentified in the Motion. (Dkt. No. 172-16 at 25, 27, 29; *see also* Dkt. No. 173 (Opposition) at 5 (arguing that "nine (9) attorneys **and paralegals**" from The Altman Law Group worked on this case) (bold letters added); Dkt. No. 174 (Reply) at 5 ("nine attorneys worked on the matter"); *id.* at 8 ("here the case was litigated by nine attorneys").) However, the instant Motion requests fees based on billing records for *eight* attorneys on the Plaintiff's side. (Dkt. No. 172 at 19.) The Court considers only the fees requested in the Motion and **reduces the total lodestar by $1,625**, the total of the three billing entries by Stocca. (Dkt. No. 172-16 at 25, 27, 29.)

Sogoyan was Senior Litigation Counsel at another major Plaintiff's lemon law firm where he litigated hundreds of cases and supervised numerous associates through all phases of litigation, including trial." (*Id.* at 6.) Additionally, Mr. Sogoyan "has successfully negotiated settlements totaling millions of dollars on behalf of consumers." (*Id.*)

Nicholas Yowarski is an associate at Quill & Arrow, LLP, with approximately ten years of experience as an attorney. (*Id.* at 7.) Mr. Yowarski "focuses on consumer protection litigation." (*Id.*) Sarah Pfeffer was also an associate at Quill & Arrow, LLP (now a former associate) who graduated from law school in 2019 and "focused on consumer protection litigation." (*Id.*) Joshua Kohanoff is an attorney at Quill & Arrow, LLP, without a specific designation as associate or partner. (*Id.* at 8.) Mr. Kohanoff graduated from law school in 2022 after serving as a law clerk at Quill & Arrow, LLP, in 2021. (*Id.*) At Quill & Arrow, LLP, Mr. Kohanoff focuses on consumer protection litigation and personal injury matters. (*Id.*) Luis Serrano is also an attorney at Quill & Arrow, LLP, with no specific designation as an associate or partner. (*Id.* at 9.) Mr. Serrano graduated from law school in 2019 and focuses on consumer protection litigation at Quill & Arrow, LLP. (*Id.*)

As to all six of the Quill & Arrow attorneys discussed above, Mr. Jacobsen cites to, and attaches as exhibits, orders issued in the Central District, the Superior Court of Los Angeles, the Superior Court of Riverside, and the United States District Court for the Southern District of California approving the fee rates of these attorneys specifically, or approving similar rates of attorneys with similar levels of experience. (*Id.* at 3-9; Dkt. Nos. 172-2—172-10.)

Attorney Bryan C. Altman declares that he is the managing attorney of The Altman Law Group and the lead trial attorney for Plaintiff in the instant action. (Dkt. No. 172-12 at 2.) Mr. Altman represents that he has:

\\

9

practiced law in California since June 1986 and have been lead trial counsel in well over 100 jury trials, with all but a handful resulting in victories for my clients. Since approximately 2014, the vast majority of my trials (approximately 30) have been in consumer protection cases for Song-Beverly, CLRA, and consumer fraud cases related to defective vehicles sold to the public. Moreover, I have been involved in numerous high-profile lawsuits in many other areas of law.

(*Id.*)

Mr. Altman states that his "track record in the consumer protection space in California is unique and unparalleled by any other attorneys active in this area," as he has "successfully litigated cases against national and international law firms," and is "the lead attorney in multiple high profile consumer protection cases appealed by Ford Motor Company receiving appellate decisions in the last two years, including two Supreme Court decisions." (*Id.* at 3.) Mr. Altman was "also the lead trial attorney for dozens of California opt-out consumers against Volkswagen in the 'clean diesel' litigation in federal court in 2019-2020," "served as the lead trial counsel in dozens of Multi District Litigation cases in California against Ford Motor Company in regard to the defective DPS6 transmissions," and served as "the lead trial counsel for dozens of Northern and Southern California JCCP cases reflecting the same." (*Id.*) Lastly, Mr. Altman claims "the unique distinction of achieving the highest non-injury consumer protection jury verdict for an individual client in California in 2018 . . . ." (*Id.*)

Attorney Andrew Jung is an associate at The Altman Law Group with "experience in mass tort litigation, workers compensation, and entertainment law. (*Id.* at 12.)

In his Declaration, Mr. Altman cites to five court orders – including one from the San Joaquin Superior Court, three from the Los Angeles Superior Court, and one from the Riverside

10

Superior Court – in which his firm's billing rates, some including Altman's current rate of $950/hr., were approved.  (*Id.* at 13-14; Dkt. No. 172-14.)

Mr. Altman also states that his firm's billing rates in this case "are commensurate with the hourly rates charged by other attorneys with comparable experience in consumer rights law," and Mr. Altman references the CL Report in doing so.  (Dkt. No. 172-12 at 12-13; Dkt. No. 172-13.)  Finally, Mr. Altman states that the "fees requested in this case are lower than the fee schedule outlined in the Laffey Fee Matrix," and he attaches a copy of the Laffey Fee Matrix as an exhibit.  (Dkt. No. 172-12 at 15; Dkt. No. 172-17.)

Based on all of the evidence above – commensurate cases, the CL Report, and the Laffey Matrix, Plaintiff contends that his counsel's hourly rates are reasonable overall, and that the individual rate for each lawyer is "appropriate given the relative experience and qualifications of these attorneys."  (Dkt. No. 172 at 18-20.)

Defendant argues that Plaintiff's counsel's hourly rates are "artificially inflated" and "arbitrarily high," and requests that "all rates above $350/hr. should be reduced to a more reasonable $350/hr," citing *Mikhaeilpoor v. BMW of North America, LLC*, 48 Cal. App. 5th 240 (Cal. Ct. App. 2020).[3]  (Dkt. No. 173 at 5, 10.)

"Generally, the reasonable hourly rate used for the lodestar calculation is that prevailing in the community for similar work."  *Gordillo v. Ford Motor Co.*, No. 1:11-cv-01786 MJS, 2014 WL 2801243, at *5 (E.D. Cal. June 19, 2014) (*quoting Ctr. For Biological Diversity et al. v. Cnty of San Bernardino*, 188 Cal. App. 4th 603, 616 (Cal. Ct. App. 2010).  The relevant

---

[3]  In arguing for a reduction of hours billed, Defendant includes a request that the Court "reduce the hourly rate for the remaining hours to a blended rate of $400 per hour."  (Dkt. No. 173 at 8 [internal quotation marks omitted].)  This request appears inconsistent with Defendant's argument for an across-the-board reduction of *all* fees over $350/hr. to $350/hr.  In any case, the Court has considered both arguments.

1    "community" is "usually considered to be the district in which the court sits." *Cox v. FCA US*
2    *LLC*, No. 3:20-cv-03808-WHO, 2022 WL 316681, at *2 (N.D. Cal. Feb. 2, 2022).  The burden
3    is on the party seeking attorney fees to prove that the fees are reasonable.  *Gordillo*, 2014 WL
4    2801243, at *5.  In determining "a reasonable hourly rate," a district court should consider
5    counsel's experience, reputation, ability, as well as the outcome of the case, the customary
6    fees, and the novelty or the difficulty of the question presented.  *Glover*, 2022 WL 17080196,
7    at *2 (*citing Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016)).  Moreover, "district
8    courts may rely 'on their own knowledge of customary rates and their experience concerning
9    reasonable and proper fees.'"  *Id.* (*quoting Ingram v. Oroudjian*, 647 F. 3d 925, 928 (9th Cir.
10   2011) (per curiam)).  Also, "[d]ecisions by other courts regarding the reasonableness of the
11   rate sought may also provide evidence to support a finding of reasonableness."  *Samuel v.*
12   *Ford Motor Co.*, CV 21-6767 DSF (SKx), 2023 WL 5207433, at *2 (C.D. Cal. Feb. 22, 2023).
13
14       Here, the Court has reviewed the cases cited by both parties, the CL Report, the Laffey
15   Fee Matrix, and the relevant factors.  *Glover*, 2022 WL 17080196 at *2.  The Court also relies
16   on the Court's own knowledge of the customary rates in this metropolitan area for work by
17   attorneys on Song-Beverly cases.  *Id.*  Based upon the foregoing, the Court finds Plaintiff's
18   counsel has sufficiently established the reasonableness of its rates in this case, and the
19   comparability of those rates to similarly-situated lawyers.  Further, as the Court has no reason
20   to question Plaintiff's Counsel's representation that it actually expended the hours billed, the
21   Court finds that the actual time expended at the rates cited above resulted in a total actual-
22   billed lodestar amount of $324,635.00 in attorney fees ($20,010.00 for Quill & Arrow, LLP
23   and $304,625.00 for The Altman Law Group).  *Lang*, 2023 WL 3149274, at *2.
24
25       **B.  Plaintiff's Attorney's Time Billed**
26
27       Defendant takes issue with several specific aspects of Plaintiff's counsel's billing
28   entries, all of which are discussed below.

12

### 1.  Block Billing

Defendant argues that Plaintiff's billing records show several entries of "block billing," in which Plaintiff's counsel included so many tasks in single entries that it is "impossible to discern how much time was spent for each task." (Dkt. No. 173-1 at 2.)  Defendant specifically points to the following twenty-four entries:

| Dates | Atty | Description | Hours | Amount |
|-------|------|-------------|-------|--------|
| 08/05/2022 | Andrew Jung | Review case file re: Dealership Employees Depositions information needed for M&C and Notices of Depositions – input into Excel matrix | 1.0 | $400.00 |
| 08/07/2022 | Bryan Altman | Review case file materials, meeting with trial team, and discussion re: defense witness depositions | 3.0 | $2,850.00 |
| **11/01/2022** | **Bryan Altman** | **Prepare outline for cross examination of Gabriel Garcia (PMK), continue review of materials including repair orders, SIBs, call logs, NHTSA, and DOT research in preparation for BMW PMK's Deposition** | **5.2** | **$4,940.00** |
| **11/02/2022** | **Bryan Altman** | **Final preparation for Gabriel Garcia deposition, attend and take deposition of BMW PMK Garcia** | **8.5** | **$8,075.00** |
| 11/10/2022 | Andrew Jung | Review documents, review and organized repair orders in preparation for Dealership Employees deposition | 1.8 | $720 |

13

| 01/22/2023 | **Bryan Altman** | **Discuss with trial team re: compilation of file materials including expert files, review of Blasjo's materials, designation, repair orders, defense expert report and rebuttal report, and prepare of D. Blasjo for deposition** | **8.8** | **$8,360.00** |
|---|---|---|---|---|
| 01/23/2023 | Bryan Altman | Final preparation of D. Blasjo, attend and defend D. Blasjo at his deposition | 7.0[4] | $6,650.00 |
| 01/24/2023 | Bryan Altman | Final Preparation for G. Garcia Expert deposition, attend and take deposition of G. Garcia (Expert) | 9.2 | $8,740.00 |
| 01/30/2023 | **Bryan Altman** | **Trial Preparation – Meeting with A. Jung re: trial brief, begin draft of Voir Dire, discuss with trial team re: same, continue drafting Opening Statement, review current trial exhibits** | **6.2** | **$5,890.00** |
| 01/31/2023 | **Bryan Altman** | **Trial Preparation – Review prior deposition and any trial testimony of PMK's and experts, revise Opening Statement, review of and discussion with A. Jung re: defense trial brief and need to respond to improprieties, re: getting additional documentation from Client** | **5.8** | **$5,510.00** |
| 02/01/2023 | **Bryan Altman** | **Trial preparation- Travel to/from Court for IT appointment, team meeting for** | **8.2** | **$7,790.00** |

---

[4] This entry is erroneously reflected in the Opposition as 8.8 hours for a total of $8,360.  (Dkt. No. 173-1 at 3.)

| | | | | |
|---|---|---|---|---|
| | | **trial countdown work, discuss with Client re: status, continue review of prior deposition testimony of PMK's and experts, begin draft of examination outline** | | |
| **02/02/2023** | **Bryan Altman** | **Trial preparation – Discuss with trial team re: D. Blasjo, prepare for trial appearance, review deposition testimony, exhibits, begin draft of exam outline for Darrell Blasjo** | **8.0** | **$7,600.00** |
| **02/03/2023** | **Bryan Altman** | **Trial preparation – Mark outline for Client preparation and preparation of expert, continue draft of exam outlines, multiple communications with Client and expert** | **7.5** | **$7,125.00** |
| **09/19/2023** | **Bryan Altman** | **Trial preparation – Revise Opening Statement in light of Court's rulings, discuss with trial team re: same, begin revision of exam outlines for expert, PMK** | **6.5** | **$6,175.00** |
| **09/20/2023** | **Bryan Altman** | **Trial preparation – review prior testimony of G. Garcia (defense PMK and expert), revise cross examination outlines, continue preparation of Client** | **7.0** | **$6,650.00** |
| 09/21/2023 | Bryan Altman | Trial preparation – Continue revise exam outlines for Client, D. Blasjo, and initial preparation of D. Blasjo | 5.5 | $5,225.00 |

| 09/22/2023 | Bryan Altman | Trial preparation – Continue reviewing transcripts and excerpting for use at trial, revise examination outlines, revise Opening, continue preparation of Client, annotate G. Garcia outlines, meeting with trial team on trial preparation | 9.2 | $8,740.00 |
|---|---|---|---|---|
| 09/24/2023 | Bryan Altman | Trial Preparation – coordinate with graphics team on presentation outline for Opening, continue preparation of Client, revise D. Blasjo Outline, continue drafting and revising of G. Garcia outlines for examination | 6.5 | $6,175.00 |
| 09/25/2023 | Bryan Altman | Trial preparation – continue preparation with Client, review Jury instructions with trial team, review defendant's exhibits, further revise Opening and revise graphics demonstrative, draft "Dealership" examination outlines | 8.5 | $8,075.00 |
| 09/27/2023 | Bryan Altman | Prepare for trial (day 3) – zoom call with D. Blasjo, zoom call with Client, update PMK outline, update D. Blasjo outlines | 5.5 | $5,225.00 |
| 09/28/2023 | Andrew Jung | Prepare for trial (day 4) – prepare for BMW's Expert and PMK (review outlines, exhibits, read all past depo transcripts from Pate and Manoukian) | 4.1 | $1,640.00 |

| 09/28/2023 | Danja Stocca | Draft Joint Proposed Jury Instructions, Joint Proposed Verdict Form and Plaintiff's Notice of Lodging Deposition Transcripts | 3.2 | $1,040.00 |
|---|---|---|---|---|
| 09/28/2023 | Bryan Altman | Prepare for trial (Day 4) – Prepare for BMW's Expert and PMK (review and revise exam outlines for defense expert and PMK, consult with D. Blasjo) | 4.8 | $4,560.00 |
| **10/01/2023** | **Bryan Altman** | **Trial preparation (for Day 5) – Review dailies, excerpt exhibits for use in Closing, draft Closing, meet with A. Jung for final trial preparation** | **6.5** | **$6,175.00** |

(Dkt. No. 172-16 at 2, 5-7, 14-17, 23-29; Dkt. No. 173-3 at 2-5.)  After reviewing all of the billing entries, including those challenged above, the Court finds that some reduction in the time billed is warranted.

"Block billing" is "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (citation omitted).  Under California law, block billing is not objectionable "per se," but it "certainly does increase the risk that the trial court, in a reasonable exercise of its discretion, will discount a fee request." *Farmers & Merchants Bank of Long Beach v. Willemsen*, No. EDCV 13-00609-JGB (SPx), 2014 WL 12593981, at *3 (C.D. Cal. Sep. 4, 2014) (*quoting Jaramillo v. Cnty. of Orange*, 200 Cal. App. 4th 811, 830 (Cal. Ct. App. 2011)).  Further, "[b]lock billing is especially troublesome when it exacerbates 'the vagueness of counsel's fee request, a risky choice since the burden of proving entitlement to fees rests on the moving

party.'" *Id.* (*quoting Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1325 (Cal. Ct. App. 2008).

Here, the challenged entries **in bold** above are so voluminous in lumping together various distinct tasks, the Court has no way to disaggregate the activities to determine whether the time billed for any particular task, or all of the tasks together, was reasonable. *Farmers & Merchants Bank of Long Beach*, 2014 WL 12593981, at *3; *Jaramillo*, 200 Cal. App. 4th at 830; *Christian Research Inst.*, 165 Cal. App. 4th at 1325; *see also Holcomb v. BMW of North America, LLC*, No. 18-cv-475 JM (BGS), 2020 WL 759285, at *7 (S.D. Cal. Feb. 14, 2020) (approving alleged block billing entries where those entries "contain multiple specific tasks that, when combined, reasonably amount to the time billed."). Instead, the bolded entries listed above mostly present a veritable "mash-up" of various tasks accomplished over the course of a day. These records do not lend themselves to a clear analysis of how much time was spent on any particular task and whether the total time spent, either on each task or in aggregate, was reasonable. *Farmers & Merchants Bank of Long Beach*, 2014 WL 12593981, at *3.

For example, in a single entry from September 22, 2023, Attorney Altman billed 9.2 hours and $8,740 for: (1) continuing to review trial transcripts and excerpting them for use at trial; (2) revising examination outlines for witnesses; (3) revising his opening statement; (4) continuing preparation of his client for testimony; (5) annotating examination outlines for an additional witness; and (6) "meeting with trial team on trial preparation." (Dkt. No. 172-16 at 23.) The Court does not doubt the veracity of counsel's reported tasks. However, the billing entry above is overstuffed with ostensibly every billable task in Mr. Altman's nine-hour trial day, and many of those tasks could have taken five minutes or five hours depending on the context, which the Court could typically glean from a more detailed breakdown of the hours billed, and which was not provided by Plaintiff's counsel. At the end of the day, this Court can only approve actual time reasonably billed, *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35, which the Court simply cannot do as to the sixteen **bolded** billing entries at

1   issue without a more detailed breakdown of the work performed.  The sixteen **bolded** billing
2   entries above require speculation to assess, and the Court finds they are too vague to determine
3   whether various tasks were reasonably billed.  *Farmers & Merchants Bank of Long Beach*,
4   2014 WL 12593981, at *3; *Jaramillo*, 200 Cal. App. 4th at 830; *Christian Research Inst.*, 165
5   Cal. App. 4th at 1325.

6

7         In the interests of justice, and given that each of the sixteen **bolded** "block-billing"
8   entries surely contain some amount of reasonably billed time, the Court finds that a 20%
9   reduction as to these entries is warranted.  The Court reaches this conclusion based upon its
10  review of the State Bar of California Committee on Mandatory Fee Arbitration, Arbitration
11  Advisory 2016-02 (2016), which reiterated its previous conclusion from 2003 that block billing
12  "hides accountability and may increase time by 10% to 30%."  *See* State Bar of California
13  Arbitration Advisory 2016-02, Analysis of Potential Bill Padding and Other Billing Issues,
14  March 25, 2016 (*available at www.calbar.ca.gov/Portals/0/documents/mfa/2016/2016-
15  02_Bill-Padding_r.pdf*).  The Court adopts 20% because it is within the fee report's middle
16  range, consistent with the trial court's approach in *Welch*.  *Welch*, 480 F.3d at 948.  As a result,
17  of the $104,145 billed in the **bolded** entries, **the Court deducts $20,829 from the total
18  lodestar for improper block billing**.

19

20          **2.   Alleged "Value Billing"**

21

22         Defendant next points to fifty-nine of Plaintiff's counsel's billing entries and argues that
23  the amount billed in those entries indicates that they "reflect what counsel believes the 'value'
24  of the task should be, not the actual time spent."  (Dkt. No. 173-1 at 5-12.)  Defendant also
25  argues that the entries reflect a "substantial number of hours" spent by Plaintiff's attorneys
26  "drafting" and "reviewing" documents "that are actually standardized forms."  (*Id.* at 5.)

27

28  \\

19

The Court already found that there is no supported reason to question the truthfulness of Plaintiff's counsel's billing records, and that includes the rates given.  The Court will not speculate whether counsel engaged in billing based upon the "value" of each task when Plaintiff's counsel denies doing so.  However, all of the challenged entries, taken together, amount to excessive billing by attorneys who, did not create original documents, but drafted or reviewed various form documents such as notices of depositions spending anywhere from 0.1 to 1.1 hours at a time, totaling $6,980.[5]  (Dkt. No. 172-11 at 7-8, 10-12, 14, 18-21, 24; Dkt. No. 172-16 at 2-6, 8, 13, 19; Dkt. No. 173-1 at 5-12); *see also Salmeron v. Ford Motor Co.*, No. 2:18-cv-07266-SVW-PLA, 2020 WL 9217979, at *4 (C.D. Cal. July 14, 2020) ("[E]xperienced counsel must exercise billing judgment to avoid excessive accumulation of 0.1 hour entries in reviewing [ ] routine documents and court communications." (citation omitted).).  Therefore, in the interests of justice, the Court reduces this amount by half, **deducting an additional $3,490 from the total lodestar calculation**.  *Lang*, 2023 WL 3149274, at *2; *Glover*, 2022 WL 17080196, at *2.

### 3.  Unsuccessful Rule 16(b) Motion

Next, Defendant argues that Plaintiff's counsel spent an inordinate amount of time – 25.4 hours – "in relation to a failed attempt to extend the discovery deadline and to complete a second deposition of Defendant's Person Most Knowledgeable."  (Dkt. No. 173-1 at 12.) Defendant points to the complained-of billing entries and contends that the Court ultimately denied Plaintiff's Rule 16(b) Motion as untimely and procedurally improper.  (Dkt. No. 173 at 13; *see also* Dkt. No. 107 at 5 (minute order, dated January 20, 2023, denying Plaintiff's request for a further deposition of Defendant's Rule 30(b)(6) designee).  Plaintiff counters that

---

[5]  Defendant erroneously listed Attorney Nicholas Yowarski's ten billing entries for January 17, 2022 twice.  (*Compare* Dkt. No. 172-11 at 7-8 *with* Dkt. No. 173-1 at 5-7.)

Defendant's counsel "improperly obstructed during a Rule 30(b)(6) witness deposition," which Plaintiff apparently is arguing necessitated the Rule 60(b) Motion.  (Dkt. No. 174 at 11.)

Defendant takes issue with the following specific billing entries:

| Date | Biller | Tasks | Hours | Amount |
|---|---|---|---|---|
| 11/04/2022 | Andrew Jung | Research options for Depositions | .9 | $360.00 |
| 11/04/2022 | Andrew Jung | Research MTC Deposition Obstruction | 1.4 | $560.00 |
| 11/11/2022 | Andrew Jung | Review deposition notes for M&C letter | 1.0 | $400.00 |
| 11/15/2022 | Andrew Jung | Began drafting M&C letter of Defendant's PMK Deposition and discussed it with B. Altman | 3.3 | $1,320.00 |
| 11/18/2022 | Andrew Jung | Finalized M&C letter for BMW's PMK Deposition | 1.3 | $520.00 |
| 11/28/2022 | Andrew Jung | Discuss re: Meet and confer response with trial team | .3 | $120.00 |
| 11/28/2022 | Andrew Jung | Began drafting response to M&C re PMK Deposition | 1.2 | $480.00 |
| 11/30/2022 | Andrew Jung | Finalize response to M&C re PMK Deposition | 1.0 | $400.00 |
| **12/06/2022** | **Andrew Jung** | **Began drafting 16(b) Motion** | **1.3** | **$520.00** |
| **12/07/2022** | **Andrew Jung** | **Continued drafting 16(b) Motion and Declaration in Support** | **2.3** | **$920.00** |
| 12/08/2022 | Andrew Jung | Call to Opposing Counsel re M&C | .1 | $40.00 |

| 12/09/2022 | Andrew Jung | Conducted research on 16(b) Motion, obtained case law to include in Motion | 2.0 | $800.00 |
|---|---|---|---|---|
| 12/09/2022 | Andrew Jung | Finalized Rule 16(b) Motion and began drafting Declaration of B. Altman in Support | 3.7 | $1,480.00 |
| 12/12/2022 | Andrew Jung | Search for emails (Exhibits) for Motion | .2 | $80.00 |
| 12/12/2022 | Andrew Jung | Complete full draft A. Jung Declaration and B. Altman Declaration in Support of Plaint'ff's 16(b) Motion with Exhibits and gathered more excerpts from PMK transcript to include | 3.9 | $1,560.00 |
| 12/16/2022 | Andrew Jung | Revised Motion, incorporated the appropriate citation into all the documents, and created Exhibit A for Declaration (transcript excerpts) | 1.3 | $520.00 |
| 12/27/2022 | Andrew Jung | Multiple correspondence with Opposing Counsel re M&C PMK | .2 | $80 |

(Dkt. No. 12-16 at 6-11; Dkt. No. 173-1 at 12-13.)

Here, the Court agrees with Defendant.  Plaintiff's counsel had ample time to respond timely to Defendant's litigation tactics by preparing and filing its motion much earlier, but

failed to do so.  After hearing extensive arguments on the issue, this Court denied Plaintiff's request and found that "Plaintiff did not exercise sufficient diligence during the discovery period" and "has not identified any mistake, emergency, or inadvertence that might excuse his failure to comply with court deadlines or persuade the Court to find that the discovery deadline should not be enforced here in the interests of justice."  (Dkt. No. 107 at 5.)

The Court finds it reasonable to deduct all of the time billed by Plaintiff's counsel in preparing the Rule 16(b) motion because it was avoidably untimely.  While it is true that "plaintiffs' counsel are still entitled to fees for time reasonably expended on unsuccessful motions or briefing," *Chism v. FCA US, LLC*, No. CV 19-9082 FMO (PJWx), 2021 WL 1181744, at *4 (C.D. Cal. Feb. 16, 2021), the motion at issue was not merely unsuccessful but clearly untimely and inefficiently billed.  Consequently, the Court deducts from the lodestar *only* the **bolded** time entries above reflecting time that counsel spent preparing the challenged motion.  The Court does not deduct from any time spent meeting with co-counsel or otherwise strategizing as to how to overcome Defendant's counsel's litigation tactics.  In total, the Court **deducts another $5,880 from the lodestar** – the sum of the seven bolded time entries above – for Plaintiff's preparation of an untimely Rule 16(b) motion.  *Lang*, 2023 WL 3149274, at *2; *Glover*, 2022 WL 17080196, at *2.

### 4. Preparation Time to Take Plaintiff's Deposition

Defendant next complains that Plaintiff's counsel spent an inordinate amount of time preparing for and taking witness depositions – 59.5 hours total,  including 4.5 hours to prepare for Plaintiff's deposition. (Dkt. No. 173 at 13.) Defendant argues that this case was not unusual and did not warrant that investment of time.  (*Id.*)  Defendant lists thirteen specific billing entries related to the preparation for and taking of depositions, which in total amount to 59.5 hours and $53,280. (Dkt. No. 173-1 at 14-15.)  Plaintiff argues that Defendant misinterpreted

the time required to prepare and take Plaintiff's deposition but does not otherwise justify the overall time devoted to depositions.  (Dkt. No. 174 at 11-12.)

The Court finds that Defendant has credibly shown that the hours Plaintiff's counsel devoted to deposition preparation in particular was excessive.  In some billing entries, deposition preparation was also ambiguously billed in conjunction with the taking of witness depositions, so much so that Plaintiff's counsel's only argument in defense was to attempt to untangle one of its ambiguous entries for the Court.  (*Id.*)  Further, the parties robustly dispute the complexity of this case, but in the Court's own experience in prior lemon law cases, often involving the same Defendant, this lemon law action was decidedly routine and did not become "complex" simply because of Defendant's litigation strategy or alleged stonewalling.

Based on an unreasonable amount of time preparing for depositions, the Court deducts 20% of the sum of the challenged entries; **an additional deduction of $10,656 to the lodestar is warranted**.  *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35.

### 5.  Allegedly Unnecessary Ex Parte Application

Defendant argues that Plaintiff's counsel billed an excessive 3.2 hours for a total of $1,390 drafting an Ex Parte Application to Continue Trial due to the unavailability of its own witness.  (Dkt. No. 173 at Dkt. No. 173-1 at 15.)  Defendant makes the unsupported assertion that it "should not be forced to compensate Plaintiff for something beyond Defendant's control."  (Dkt. No. 173 at 14.)  The Court has reviewed the challenged entries and finds that the billing in those entries was reasonable.  No deduction to the lodestar is warranted here. *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35.

\\
\\

24

1

2

### 6.   Time Spent Drafting and Opposing Motions in Limine

3

Defendant next argues that Plaintiff's counsel "billed 8.2 hours ($3,470.00) to generate and oppose standard Motions in Limine which Plaintiff and Defendant serve in nearly every Song-Beverly case." (Dkt. No. 173 at 14.)  Defendant points to seven related billing entries totaling 8.2 hours and $3,470.  (Dkt. No. 173-1 at 15-16.)  Plaintiff points to the fact that there were twenty-one total motions in limine either made or opposed by Plaintiff, and argues that the billed hours were reasonable under the circumstances.  (Dkt. No. 174 at 12-13; Dkt. Nos. 45-65.)  The Court has reviewed the challenged entries and finds that the billing in those entries was reasonable.  No deduction to the lodestar is warranted here. *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35.

12

13

### 7.   Time Spent Opposing Motion for Reconsideration

14

15

Defendant next contends that Plaintiff's counsel excessively billed 9.1 hours for a total of $5,210 to "supposedly review, research, and oppose" Defendant's Motion for Reconsideration concerning its Motion in Limine No. 5.  (Dkt. No. 173 at 14; Dkt. No. 173-1 at 16-17.)  Plaintiff counters that opposing the motion for reconsideration at issue "necessitated such time because it related to the most important portion of the case: keeping repair order evidence in.  This time was well spent as Defendant's motion was ultimately unsuccessful." (Dkt. No. 174 at 13.)  Given the number of hours the Court and its staff spent on the same issue, as well as its importance to the case, the Court does not find the time spent by Plaintiff's counsel to successfully oppose Defendant's motion to be excessive or unreasonable.  Indeed, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; . . . ." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  The Court does so here as it concerns the motion for reconsideration at issue and finds no reason to reduce any fees related to opposing that motion.  No deduction to

28

1  the lodestar is warranted here.  *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at

2  35.

3

4  ### 8. Time Billed for Discovery

5

6  Defendant argues that Plaintiff's counsel billed an excessive 15.8 hours handling

7  "standard written discovery."  (Dkt. No. 173 at 14-15; Dkt. No. 173-1 at 17-19.)  Plaintiff

8  responds that the billing entries at issue "are reasonable, considering each discovery request

9  requires analysis of the request, review of the file, client conversations, and drafting/review."

10  (Dkt. No. 174 at 13.)  Plaintiff also notes that "Defendant does not specifically point to the

11  portions of discovery it believes warrant a reduction, nor does Defendant point to any authority

12  showing how such broad reductions are warranted."  (*Id.*)  In this instance, the Court agrees

13  with Plaintiff.  Defendant generally argues that the billing was excessive but fails to explain

14  how.  The time at issue was billed over the course of 19 entries, the longest of which was 2.9

15  hours to "Draft Response to Request for Admissions," and most of which were under an hour.

16  These billing entries include reviewing, drafting, and responding to various discovery requests.

17  (Dkt. No. 173-1 at 17-19.)  The time billed appears reasonable, and Defendant has articulated

18  no facts to the contrary.  No deduction to the lodestar is warranted here.  *Lang*, 2023 WL

19  3149274, at *2; *Warren*, 30 Cal. App. 5th at 35.

20

21  ### 9. Time Billed for Corresponding with Plaintiff

22

23  Next, Defendant argues that Plaintiff's counsel spent an inordinate amount of time

24  corresponding with Plaintiff, a total of 7.3 hours.  (Dkt. No. 173 at 15; Dkt. No. 173-1 at 19-

25  20.)  Defendant specifically argues that "[t]his amount of time is excessive because the nature

26  of the email correspondence cannot be determinately ascertained from the description included

27  in counsel's billing statements."  (Dkt. No. 173 at 15.)  Plaintiff argues in reply that the billing

28  entries at issue actually include detailed descriptions of the communications, that Plaintiff's

26

counsel "routinely billed the minimum 0.1 hours for these communications," and that Defendant cites no authority for reducing the time billed.  (Dkt. No. 174 at 13.)  Again, Defendant seeks a reduction without explaining how the time billed was unreasonable.  The 7.3 hours that Defendant challenges constitute the entirety of Plaintiff's counsel's billed communications with their client over the course of nearly two years.  (Dkt. No. 173-1 at 19-20.)  While the descriptions of the communications in these 24 billing entries are occasionally scant, they reasonably reflect what appear to be a series of short communications.  (*Id.*)  Again, the time billed appears reasonable, and Defendant has articulated no facts to the contrary.  No deduction to the lodestar is warranted here.  *Lang*, 2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35.

### 10. Travel

Defendant challenges three billing entries related to travel by Plaintiff's counsel to and from court to attend an "IT appointment" prior to trial at the courthouse, as well as to attend the hearing on the above-referenced motion for reconsideration.  (Dkt. No. 173 at 15-16; Dkt. No. 173-1 at 20-21.)  Defendant argues that this time is not recoverable because it was excessive and not reasonably necessary to the litigation.  (Dkt. No. 173 at 15; Dkt. No. 173-1 at 20.) Specifically, Defendant contends that the IT appointment did not require two attorneys, yet both Mr. Altman and Mr. Jung traveled to the courthouse and billed the time for doing so.  (Dkt. No. 173 at 15.) Defendant further argues that the IT appointment was voluntary and "ultimately futile, as Plaintiff's technical difficulties resulted in trial being delayed and the jury temporarily excused."  (*Id.*)  Finally, Defendant posits that the Court authorized the parties to appear remotely for the hearing on the motion for reconsideration, so the 3 hours billed for travel to and from the hearing was unnecessary.  (*Id.* at 16.)  Plaintiff counters that the two attorneys who traveled to the IT appointment were the same attorneys who tried the case, so both of them needed to know how to operate the equipment.  (Dkt. No. 174 at 14.)  Plaintiff also notes that the technical difficulties Defendant refers to occurred when "the Court's Audio-Visual team

1   discovered the HDMI cable at Plaintiff's table became defective," but that, contrary to
2   Defendant's implication, any delay was not due to Plaintiff's counsel's inability to use IT
3   equipment.  (*Id.*)
4
5       Again, Defendant omits from its argument any facts or legal citations showing that the
6   billing entries at issue were unreasonable.  *Lang*, 2023 WL 3149274, at *2; *Glover*, 2022 WL
7   17080196, at *2.  As to the IT appointment, Defendant fails to explain how the voluntariness
8   of the Court's IT appointment made the time for attending it unrecoverable.  In the Court's own
9   experience, attorneys who take advantage of the opportunity to come to court ahead of trial and
10  familiarize themselves with the equipment benefit considerably, and waste far less trial time.
11  Indeed, those attorneys who do not attend the IT appointment are routinely forced to rely on
12  attorneys who do attend – usually opposing counsel – to solve their technical issues that arise
13  in the middle of trial.  The Court disagrees with Defendant's assertion that the IT appointment
14  was not reasonably necessary to this litigation.
15
16      However, the Court will reduce the total lodestar by three hours for Mr. Jung's drive to
17  and from the courthouse to attend the hearing on the motion for reconsideration.  On July 21,
18  2023, in granting Defendant's request to appear for the hearing via videoconference, the Court
19  specifically ordered in all caps, bold, and underlined letters, that "all parties will appear via
20  Zoom video-telephonic for the hearing." (Dkt. No. 131.)  Therefore, the Court finds Mr. Jung's
21  billing for travel to and from the courthouse on July 26, 2023 unreasonable (dkt. no. 172-16 at
22  21), and **deducts the total time billed in that entry ($1,200) from the total lodestar**.  *Lang*,
23  2023 WL 3149274, at *2; *Warren*, 30 Cal. App. 5th at 35.
24
25      **11. Preparation of the Instant Fee Motion**
26
27      Defendant argues that Plaintiff's counsel billed excessively for its work on the instant
28  fee Motion.  (Dkt. No. 173 at 16; Dkt. No. 173-1 at 21.)  Defendant contends that Plaintiff's

counsel – between the two law firms – billed 3.9 hours ($1,700) in connection with drafting the instant Motion and declarations in support. (Dkt. No. 173-1 at 21.)  Further, Defendant points out that Plaintiff "claims an anticipated $6,000 in attorneys' fees in connection with reviewing Defendant's Opposition and drafting Plaintiff's Reply." (*Id.*)  Defendant argues that these amounts are "incredibly excessive, given that all Plaintiff's attorneys had to do to provide their billing entries was to hit print on their billing program to generate the bill.  The only unique parts of the fee Motion are the description of the case and the fee records." (*Id.*)  Plaintiff argues in the Reply that "[f]ee motions are Plaintiff's attorneys' chance to get paid.  Extensive time and detail must be given to ensure they are not wasting their time." (Dkt. No. 174 at 14.)

Fees for preparing and defending the instant Motion are recoverable.  *Quinonez v. FCA US, LLC*, No. 2:19-cv-02032-KJM-JDP, 2022 WL 2007429, at *3 (N.D. Cal. June 6, 2022) ("Generally, a plaintiff is entitled to [reasonable] fees spent drafting and defending the fee motion.") (citation and internal quotation marks omitted).  However, in determining an appropriate fee award, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  Here, Defendant is correct that Plaintiff's counsel billed a total of 3.9 hours ($1,700) in connection with drafting the instant Motion and declarations in support, and that Plaintiff's counsel anticipated billing $6,000 for drafting the Reply and attending the hearing. (Dkt. No. 172-1 at 10, ¶ 28; Dkt. No. 172-11 at 28; Dkt. No. 172-16 at 29.)  The Court finds that Mr. Jacobson's anticipated billed time of $6,000 to draft the Reply and attend the Motion hearing is unreasonable.  First, Neither Mr. Jacobson nor anyone from his law firm drafted the Reply. (Dkt. No. 174 at 16.)  Second, the hearing on the instant Motion lasted less than a half hour and was conducted via videoconference. (Dkt. Nos. 176, 178.)  Third, the Reply is relatively short and chiefly reiterates arguments made in the Motion or gives perfunctory retorts to Defendant's arguments. (Dkt. No. 174.)

For the reasons explained above, the Court exercises its discretion to **reduce the total lodestar amount by an additional $3,000**.  *In re Ford Motor Co. DPS6 Powershift Transmission Products Liability Lit.*, 2021 WL 3163799, at \*6; *Gonzalez*, 729 F.3d at 1202.

### C. The Court Declines to Apply a Lodestar Multiplier

Plaintiff argues that his counsel is entitled to a multiplier fee enhancement of 1.50 based upon the risks presented by this litigation, the novelty and difficulty of the legal and factual issues involved, the results obtained, and the skill exhibited by Plaintiff's counsel.  (Dkt. No. 172 at 21-24.)   In *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (Cal. 2001), the California Supreme Court affirmed that trial courts determining attorney fee awards were permitted to "include a fee enhancement for the purpose, e.g., of compensating the attorney who agreed to undertake such representation at the risk of nonpayment or delayed payment, in an amount approaching the market rate for comparable legal services."  However, "the trial court is not required to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof."  *Id.* at 1138.  The *Ketchum* Court further emphasized that:

> when determining the appropriate enhancement, a trial court should not consider these factors to the extent they are already encompassed within the lodestar.  The factor of extraordinary skill, in particular, appears susceptible to improper double counting; for the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar.

*Id.*

\\

1    Here, the Court finds no basis to award a multiplier.  First, this was a straightforward

2 single plaintiff, single vehicle Song Beverly lawsuit.  Despite Plaintiff's insistence that the

3 litigation was complicated by Defendant's tactics, "the Song-Beverly claims in this case were

4 not novel and did not involve difficult questions."  *In re Ford Motor Co. DPS6 Powershift*

5 *Transmission Products Liability Lit.*, 2021 WL 3163799, at *7.  Second, the risk assumed by

6 Plaintiff's counsel, as well as the skill displayed by Plaintiff's counsel in attaining a favorable

7 result for the client, are accounted for in counsel's hourly rates and the final lodestar award,

8 below.  *Id.* at *7-8; *Ketchum*, 24 Cal. 4th at 1138.

9

10   **D.  Calculating the Lodestar**

11

12   The Court calculates the lodestar as follows: $324,635 in actual time expended/billed;

13 *minus* $1,625 (unidentified Stocca entries); *minus* $20,829 (block billing); *minus* $3,490

14 (charging attorney rates for routine tasks); *minus* $5,880 (untimely Rule 16(b) motion); *minus*

15 $10,656 (unreasonable time preparing for depositions); *minus* $1,200 (unreasonable travel

16 time); *minus* $3,000 (unreasonably anticipated billing amount to draft the Reply and appear at

17 the hearing on the instant fee Motion).  Subtracting the necessary sums above, the Court

18 **awards Plaintiff's counsel $277,955 in total lodestar fees**.[6]  *Rahman*, 594 F. Supp. 3d at

19 1203; *Nightingale*, 31 Cal. App. 4th at 104.

20

21 \\

22 \\

23 \\

24 \\

25 \\

26 \\

27

28 [6] After considering the arguments of the parties, the Court denies Plaintiff's request for additional costs and fees.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Accordingly, for the reasons outlined above, Plaintiff's Fee Motion is GRANTED IN PART in the amount of $277,955.  Defendant shall pay this fee award to Plaintiff's counsel **within twenty-one (21) days of the date of this Order.**

DATED: February 16, 2024

_____

KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE